**Theresa HYDE, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.04 CV 72342 DT.**

United States District Court, E.D. Michigan, Southern Division.

March 2, 2005.

Lewis M. Seward, Seward, Tally, Bay City, MI, for Plaintiff.

Sheila H. Gaskell, Susan K. DeClercq, U.S. Attorney's Office, Detroit, MI, for Defendant.

EDMUNDS, District Judge.

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter has come before the Court on the Magistrate Judge's Report and Recommendation. Being fully advised in the premises and having reviewed the record and the pleadings, including Defendant's Objections if any, the Court finds that the Magistrate reached the correct conclusion in the Report and Recommendation. Accordingly, the Court hereby ACCEPTS AND ADOPTS the Magistrate Judge's Report and Recommendation. It is further ordered that the Commissioner's motion for summary judgment is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby REMANDED to the Commissioner for further proceedings.

## REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

### I. Introduction

This Supplemental Security Income (SSI) case comes before the court on the parties' cross-motions for summary judg-

ment. For the reasons stated herein, the court recommends that the Commissioner's motion be **DENIED** and that the matter be remanded to the Commissioner for further proceedings.

## II. Background

On August 23, 2001, plaintiff filed an application for SSI, alleging that she was disabled as of February 1, 1997, due to a mental disorder, back and knee problems, acute respiratory distress syndrome, asthma, and pneumonia. (Tr. 61) Following the initial denial of her claim by the Social Security Administration (SSA), plaintiff requested a hearing before an administrative law judge (ALJ). Prior to the hearing date, plaintiff submitted a memorandum in which she amended her disability onset date from February 1, 1997, to August 23, 2001. (Tr. 464) The hearing was held on December 11, 2003. (Tr. 518–57)

On February 6, 2004, the ALJ issued a decision denying plaintiff's claim. (Tr. 14–29) The ALJ determined that plaintiff suffered from desquamative interstitial pneumonitis (or idiopathic pulmonary fibrosis), hypothyroidism, degenerative disc disease of the lumbar spine, osteoporosis, bi-polar disorder, depressive disorder NOS, an anxiety disorder with agoraphobic tendencies, an adjustment disorder with mixed features, and a borderline personality disorder. (Tr. 23) Further, the ALJ found that plaintiff had a history of asthma and substance abuse, and that she was status post hysterectomy and bilateral salpingo-oophorectomy. *Id.* The ALJ concluded that plaintiff's impairments were "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii), but that she did not

have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 25) The ALJ further determined, based upon the hearing testimony of a vocational expert (VE), that in spite of her impairments, plaintiff had the residual functional capacity (RFC) to perform a substantial number of sedentary jobs in the national economy.[1] Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 27–29)

On March 3, 2004, plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 13) The Appeals Council denied the request on April 23, 2004. (Tr. 5–7) The ALJ's decision thus became the final determination of the Commissioner.

On June 29, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends in her motion that the ALJ's RFC determination and the hypothetical question he posed to the VE regarding her ability to engage in substantial gainful activity did not include all of her functional limitations. Plaintiff further contends that the record, taken as a whole, establishes that she lacks the capacity to engage in substantial gainful activity on a regular and continuous basis.

## III. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is

---

1. "Sedentary" work is defined in 20 C.F.R. § 416.967(a) as follows:

   Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying our job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(C)(I). The claimant bears of the burden of proving that she is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir.2001).

A five-step process is used to evaluate SSI claims. *See* 20 C.F.R. § 416.920. In *Foster*, at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the

claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.[2]

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

■ Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir.1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997). The Sixth Circuit stated in *Brainard*, 889 F.2d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so

2. *Foster* involved a claim for Social Security disability benefits, not SSI, as in this case. However, the analysis is the same regardless of whether the claim in question is one for disability benefits or SSI.

long as substantial evidence supports the conclusion reached by the ALJ." *Key,* 109 F.3d at 273.

### IV. Analysis

#### A. Accuracy of Hypothetical

■ Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, the VE's testimony in response thereto constitutes substantial evidence to support a finding that the claimant is capable of performing a significant number of jobs in the national economy. *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's answer cannot support such a finding. Plaintiff claims that the ALJ's RFC determination, as incorporated in the hypothetical, was deficient in that he failed to fully account for her breathing difficulties and the functional limitations imposed thereby.

The ALJ made the following findings with respect to plaintiff's RFC:

No period of 12 consecutive months has elapsed during which the claimant lacked the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967 that involves walking only ten yards at one time, only occasional bending at the waist or knees[,] occasional twisting of the torso, occasional kneeling, no crawling, no climbing stairs or ladders, no exposure to high humidity, the ability to use an oxygen tank continuously at her work place, only occasional interaction with supervisors or members of the general public, occasional changes in the work setting, and occasional independent decision-making or planning.

(Tr. 28) The ALJ incorporated his RFC determination into the hypothetical questions he posed to the VE at the hearing. (Tr. 548–52) Based on the VE's testimony, the ALJ determined that plaintiff was not disabled because there were a substantial number of sedentary jobs in the national economy that she could perform.[3] (Tr. 29)

In assessing plaintiff's RFC, the ALJ determined that as a result of her respiratory impairments, she could only perform jobs that would allow her to use an oxygen tank on a continuous basis while working. (Tr. 28) The ALJ included such a restriction in the hypothetical he posed to the ALJ. Plaintiff agrees that such a restriction was appropriate, but contends that the ALJ did not go far enough.

At the hearing, plaintiff testified that each tank contained approximately three hours worth of oxygen and that it took her 15 to 20 minutes to change a tank. (Tr. 541, 552) She thus estimates that she would need to change tanks three times during the course of a normal work day and that it would take her a total of 45 to 60 minutes per day to do so. In connection therewith, the VE testified, in response to a question posed by plaintiff's counsel, that if plaintiff required extra time beyond normal work breaks to change tanks, "then that would be getting into accommodated work. It would not normally be tolerated in [a] competitive environment." (Tr. 552)

In addition to the above, plaintiff testified that she took Albuterol and Atrovent breathing treatments three to four times per day, that each treatment took about 30 minutes, and that it typically took her 15

---

**3.** The ALJ cited as examples of the jobs plaintiff could perform clerical sorter and surveillance systems monitor. (Tr. 29)

to 20 minutes to recover from the "[s]haking and dizziness" she experienced as a result of the treatments. (Tr. 535–36) Plaintiff also testified that the Atrovent gave her headaches that usually lasted for 30 minutes. (Tr. 537) Further, plaintiff stated that she typically took the treatments at the same times every day—9:00 a.m., 3:00 p.m., 5:00 p.m., and 9:00 p.m. (Tr. 536) Further, Dr. Piyush Patel stated the following in a letter to plaintiff's counsel dated December 2, 2003:

> In response to your questions regarding Ms. Hyde, I am writing my reply for the questions you have asked. As you are aware, Ms. Hyde has been seen in our office for the diagnosis of the [sic] lung disease since November 2001. She was last seen in my office in August 2003. Regarding your question for the duration of the breathing treatment, I do agree with the patient that usually a breathing treatment takes anywhere from 15 to 20 minutes to complete the course of treatment. The patient can have residual side effects in the form of jitters or tremors from the breathing medications she is taking, which is known as Proventil or the albuterol nebulizer. Usually, it does not last for a long time.
>
> Regarding your next question regarding the frequency of the treatment, we did advise her to take the breathing treatment every 6 to 8 hours and if possible the patient should be taking these medications as suggested. However, there might be a time when the patient's dyspnea is worse and she might require treatment anywhere between every 4 to 6 hours.

(Tr. 463) As with the issue regarding the changing of the tanks, the VE testified that if plaintiff could not administer the breathing treatments during normal work breaks, then she would be unable to satisfy the requirements of most employers. (Tr. 553) Plaintiff contends that the ALJ should have included in the hypothetical additional accommodations for the time she would need to change her oxygen tanks and administer the breathing treatments, and that the hypothetical was rendered inaccurate by his failure to do so.

As plaintiff indicates, the ALJ did not include in the hypothetical plaintiff's need to change oxygen tanks every three hours, and he did not discuss the issue in his opinion. Likewise, the ALJ did not include any accommodation for the breathing treatments in his RFC determination or the hypothetical. However, with respect to the breathing treatments, the ALJ stated the following in his opinion:

> [Plaintiff's] testimony that she requires four 30–minute breathing treatments daily between the hours of 9:00 AM and 9:00 PM and that these treatments immobilize her for about 20 minutes, is not substantiated by her treating physician's records. Dr. Patel's December 2, 2003 letter states that treatments of 15 to 20 minute duration producing "not very long" side effects in the form of "jitters or tremors" have been prescribed at 6 to 8 hour intervals, but might occasionally require treatment as often as 4 to 6 hours if the claimant experiences an exacerbation of her ordinary symptoms.

(Tr. 25) Thus, the ALJ apparently found plaintiff's testimony regarding her breathing treatments to be lacking in credibility based upon the information provided by Dr. Patel.

■ While there may be some minor discrepancies between plaintiff's testimony regarding her breathing treatments and the information provided by Dr. Patel, the discrepancies are immaterial. Dr. Patel's statements, which are uncontradicted by any evidence or testimony in the record, show that plaintiff would be required to administer at least one breathing treatment during the course of a normal work

day, with two treatments on some days, and that the treatments, including recovery time, would take a minimum of approximately 20 minutes each. Further, the court finds no substantial basis in the record for discrediting plaintiff's testimony regarding her need to change oxygen tanks up to three times during a normal workday or her testimony regarding the time it takes her to do so. Accordingly, the record, as it stands, establishes that in order to address her breathing difficulties, plaintiff would be required, at a minimum, to take 4 breaks during the work day with each break taking roughly 20 minutes. The breaks would thus take up at least one hour and 20 minutes of her day, not to mention routine restroom and lunch breaks, and would thus likely have a significant impact upon plaintiff's ability to maintain a regular work schedule.

Based on the foregoing, while the ALJ partially accommodated plaintiff's lung condition in the hypothetical by including therein plaintiff's need to use an oxygen tank on a continuous basis, he did not fully account for all of the limitations imposed by plaintiff's lung condition. The ALJ made no mention whatsoever in the hypothetical of plaintiff's need to administer breathing treatments, and by simply stating in the hypothetical that she required the use of oxygen tanks on a continuous basis, the ALJ ignored the fact that plaintiff would be required to change those tanks up three times a day. The hypothetical was therefore deficient. In addition, as is discussed further below, if these factors had been included in the hypothetical, the VE may well have reached a different conclusion as to plaintiff's ability to work. Thus, the court cannot say that the error was harmless. Accordingly, the VE's testimony cannot constitute the substantial evidence necessary to support the ALJ's finding that plaintiff was capable of performing a range of sedentary work.

### B. Proof of Disability

In light of the above findings, the court is presented with the question of whether this matter should be remanded for further proceedings, or whether a judicial award of benefits is warranted. In *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994), the Sixth Circuit stated the following:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.... A judicial award of benefits is proper only where the proof of disability is strong and evidence to the contrary is lacking.

Plaintiff contends that the record as a whole contains overwhelming proof of disability and, therefore, that an immediate award of benefits is warranted.

In support of her argument, plaintiff relies primarily on the opinions of Dr. Koshi Oommen, M.D., Dr. Williams, Ph.D., and Dr. Janet Warner. Dr. Oommen indicated in a physical RFC form that plaintiff could stand, walk, and sit for one to two hours each out of an eight-hour workday. (Tr. 309) Plaintiff interprets these findings as an opinion that she could work no more than six hours per day, which would effectively render her disabled. *See, e.g., Social Security Ruling* 96–8p ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule"). Further, in a medical questionnaire dated November 7, 2001, Dr. Oommen responded "no" to the following question: "As a treating physician, do you

feel this patient has the physical capacity to sustain any type of employment on a full time basis." (Tr. 388) Dr. Williams and Dr. Warner both indicated in mental RFC forms that plaintiff was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 313, 514) Further, Dr. Warner indicated in a Mental Impairment Questionnaire that on average, plaintiff would likely be absent from work more than three times per month due to her impairments and related treatment, and that she would have difficulty working on a regular basis. (Tr. 512) Plaintiff contends that these opinions, together with the record as a whole, establish that she is disabled.

Dr. Williams examined plaintiff on only one occasion and thus cannot be considered a treating doctor. It also appears from the record that Dr. Warner examined plaintiff on only one occasion. Thus, like Dr. Williams, Dr. Warner cannot be considered a treating physician. Accordingly, the ALJ was not required to give either Dr. Williams' or Dr. Warner's opinion any particular weight. In any event, their opinions are contradicted by other evidence in the record, including the findings of Dr. Lawrence Domino, who indicated in a mental RFC form that plaintiff was not significantly limited in the majority of the functional areas included in the form, and that she was only moderately limited in the area of the "ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 432)

Unlike Dr. Williams and Dr. Warner, the record indicates that Dr. Oommen was a treating physician. As the Sixth Circuit stated in *Warner v. Commissioner of Social*, 375 F.3d 387, 390 (6th Cir.2004) (citations omitted):

> Generally, the opinions of treating physicians are given substantial, if not controlling, deference. Treating physicians opinions are only given such deference when supported by objective medical evidence. The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.

Applying this standard, Dr. Oommen's opinion, as expressed in the RFC form and the questionnaire, was entitled to neither controlling nor even substantial weight. He gives no basis for his opinion and cites no objective medical findings in support thereof. Further, his opinion is contradicted by the findings of Dr. Sadia Shaikh, who prepared a physical RFC form in which he made findings consistent with the ability to perform light work.[4]

The record establishes that plaintiff suffers from numerous severe impairments, and the ALJ made findings to that effect. However, the question is not whether plaintiff is severely impaired or has significant limitations related to her impairments. Rather, the question is whether she is so limited by her impairments as to be unable to engage in any substantial gainful activity whatsoever. This court cannot say, on the record before it, that the evidence conclusively establishes that plaintiff is unable engage in substantial

---

4. "Light" work is defined in 20 C.F.R. § 416.967(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

gainful activity such that an immediate award of benefits by the district court is warranted. With respect to plaintiff's mental impairments, there is conflicting evidence in the record as to the extent to which she is limited thereby. The ALJ reasonably resolved those conflicts and incorporated in the hypothetical he posed to the ALJ restrictions designed to accommodate plaintiff's mental impairments. With regard to plaintiff's physical impairments, the record is unclear as to the extent to which her need to change her oxygen bottles and administer breathing treatments impacts upon her ability to work. The VE's testimony indicates that if plaintiff could not perform those activities during normal work breaks, the number of jobs available to her would be substantially reduced. However, there is no evidence in the record as to whether plaintiff could reasonably perform those activities during normal work breaks and, aside of the VE's equivocal testimony, no evidence as to whether all employment would be precluded if plaintiff could not do so or whether she could maintain employment with some "'moderate employer accommodation.'" *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 479–80 (6th Cir. 1988)("The prospects for 'moderate employer accommodation' are not something to which the Secretary or the courts must turn a blind eye")(*quoting Auer v. Secretary*, 830 F.2d 594, 596 (6th Cir.1987)). Thus, all "essential factual issues" have not been resolved. *Faucher*, 17 F.3d at 176. Accordingly, the court finds that the appropriate course of action is to remand the matter to the Commissioner for further proceedings.

### V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, and that the matter be remanded to the Commissioner pursuant to sentence four of

42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation, including the taking of additional testimony from plaintiff and additional expert testimony, as necessary.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.