NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0289n.06

No. 11-3258

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEVEN DAWSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |

FILED

*Mar 13, 2012*

LEONARD GREEN, Clerk

Before: KEITH, MARTIN, and GIBBONS, Circuit Judges.

PER CURIAM. Steven Dawson appeals a district court judgment that affirmed the denial of his July 2004 application for social security disability insurance benefits and his March 2006 application for supplemental security income benefits.

Dawson had filed prior applications for disability benefits in 2001 and 2002. It appears that Dawson did not seek an administrative hearing regarding the denial of his 2001 application. His 2002 application was denied by an Administrative Law Judge (ALJ) on February 10, 2004, because a limited but significant number of heavy jobs were available that Dawson could perform despite his impairments. Thus, the ALJ in Dawson's current case rejected any claim that Dawson might have for benefits through February 10, 2004, pursuant to the doctrine of res judicata. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).

The medical record includes the reports of Dawson's treating neurologist, Dr. Lawrence Goldstick. In August of 2004, Dr. Goldstick opined that Dawson was totally disabled due to "seizures and psychological and psychiatric disorders." In October 2006, he indicated that Dawson

could not perform the mental requirements of work because of a seizure disorder, rage reaction, impulse control disorder, and the side effects of his medication.

In December 2004, Dawson was hospitalized for approximately one week after threatening people at Comprehensive Counseling and at the Social Security office. He was diagnosed with an acute anxiety stress reaction, an organic mood disorder with psychosis, and a seizure disorder.

On July 16, 2005, Dawson was evaluated by a state agency psychologist, Dr. Steve Sparks. Dr. Sparks noted that Dawson appeared to have clinically significant anxiety, depression, hostility, suspiciousness, unusual thought content, blunted affect, emotional withdrawal, motor retardation, and tension. He reported that Dawson's ability to relate to others was extremely impaired; that his ability to understand, remember, and carry out instructions was markedly impaired; that his ability to perform simple repetitive tasks was moderately impaired; and that his ability to withstand work stress was extremely impaired.

On October 8, 2006, Dawson's family physician, Dr. Richard Chamberlain, completed a form which indicated that Dawson was markedly restricted in the activities of daily living, that he had extreme difficulty in maintaining social functioning, and that he had marked deficiencies in concentration and persistence of pace that resulted in an inability to complete tasks on time. Dr. Chamberlain subsequently completed another form which indicated that Dawson was unable to perform even sedentary work.

Dawson received counseling from Dr. Ramakrishna Gollamudi in 2006 and 2007. In February 2007, Dr. Gollamudi opined that Dawson had poor or no ability to relate to co-workers, to deal with the public, to deal with work stresses, to function independently, to maintain attention or concentration, to demonstrate reliability, or to behave in an emotionally stable manner.

In addition, the medical record was separately reviewed by four non-examining medical consultants: Rod Coffman, Ph.D.; Thomas Vogel, M.D.; Leslie Rudy, Ph.D.; and Dr. Myung Cho. Their reports indicated that Dawson had the residual functional capacity to perform work that was consistent with the ALJ's prior decision to deny benefits.

Another ALJ conducted a hearing on Dawson's current applications for benefits in 2008. This ALJ found that Dawson had severe impairments consisting of: "1) a history of a seizure disorder; 2) intermittent low back pain; and 3) depression with anxiety." The ALJ found that Dawson could not perform his past relevant work, even though his impairments were not equivalent to any of the impairments that are described in 20 C.F.R. Part 404, Subpart P, Appendix 1. However, the ALJ found that Dawson had the residual functional capacity to perform a significant, but limited range of medium work. The ALJ relied on the testimony of a vocational expert to determine that Dawson was not disabled because a significant number of jobs in the economy were still available to him. The ALJ's opinion became the final decision of the Commissioner on May 7, 2009, when the Appeals Council declined to review the ALJ's decision.

Dawson filed a complaint in district court. The district court adopted a magistrate judge's recommendation and affirmed the denial of benefits on January 10, 2011. Dawson now appeals.

"When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The substantial evidence standard is less exacting than the preponderance of evidence standard. If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Id.* (citations omitted).

Dawson argues that the ALJ should have given controlling weight to the opinions of his treating physicians: Drs. Goldstick, Chamberlain, and Gollamudi, and that he should have given more weight to the opinion of the examining consultant, Dr. Sparks. The opinion of a treating physician may be afforded controlling weight if it is consistent with the evidence and supported by sufficient clinical findings. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). However, an ALJ is not bound by such an opinion if there is substantial medical evidence to the contrary. *Id.* In addition, the ALJ is not bound by a physician's conclusory opinion that a claimant is unable to work. *See Bass*, 499 F.3d at 511.

The ALJ found that Dr. Goldstick's conclusions were "poorly supported by detailed objective findings and are inconsistent with other substantial evidence, including his own progress notes." The ALJ correctly noted that the overall record indicated that Dawson's seizures were infrequent and that Dr. Goldstick's notes "generally reflect normal physical functions and a stable neurological status." Finally, the ALJ opined that Dawson's mental problems were outside the area of Dr. Goldstick's expertise as a neurologist.

The ALJ found that Dr. Chamberlain's opinion that Dawson was fully disabled was not supported by detailed objective data and that it was inconsistent with other evidence in the record. He also reasoned that Dr. Chamberlain's conclusion was incompatible with Dawson's daily activities.

The ALJ found that there was no good clinical support for Dr. Gollamudi's opinion that Dawson was severely limited in his ability to perform the mental or emotional demands of competitive work. The ALJ stated that the progress notes from Dr. Gollamudi's clinic generally indicate that Dawson's mental status improved with treatment.

Finally, the ALJ acknowledged Dr. Sparks's observation that Dawson was limited in his ability to tolerate stress and to interact with others. However, the ALJ found that Dr. Sparks's examination did not support a finding of total disability. In so ruling, the ALJ noted the opinions of the four other agency consultants, who indicated that Dawson's condition had not changed significantly since his disability application was denied in 2004.

We conclude that the ALJ gave sufficient reasons for discounting the opinions of Dawson's treating physicians. *See id.* at 511-12. Moreover, he gave adequate deference to their opinions by finding that Dawson had severe impairments that precluded the performance of his past work and significantly limited the types of other jobs that he could perform. *See id.* at 512; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004). Indeed, the ALJ found that Dawson's ability to perform work-related activities was more limited than it had been when Dawson's prior application was denied.

The ALJ posed a series of hypothetical questions to the vocational expert in which he asked the vocational expert to assume a claimant who was limited to the exertional requirements of medium work with a sit/stand option. The hypothetical claimant could not climb ropes, ladders, or scaffolds, and could only occasionally balance, stoop, kneel, and crouch. With regard to non-exertional limitations, the ALJ asked the vocational expert to assume that the claimant could not be exposed to hazards such as dangerous machinery or unprotected heights. The hypothetical claimant would not be required to drive on the job, or be required to follow complex or detailed instructions. The claimant was limited to low-stress jobs that did not involve teamwork, production quotas, or over-the-shoulder supervision. In addition, the hypothetical claimant was limited to jobs that required little or no concentration and, thus, would not be required to maintain concentration on a single task for more than fifteen minutes at a time. Finally, the claimant would have no direct dealings with the general public and only limited contact with co-workers and supervisors.

In response, the vocational expert identified 19,000 unskilled jobs that would be available to such a claimant despite his impairments. This response satisfied the Commissioner's burden of showing that a significant number of jobs were still available to Dawson, even if he could not perform his past work. *See Harmon v. Apfel*, 168 F.3d 289, 291-92 (6th Cir. 1999). Hence, there was substantial evidence in the record to support the Commissioner's ultimate determination that Dawson was not entitled to social security disability insurance benefits and supplemental security income benefits.

The district court's judgment is affirmed.