**David H. McLEAN, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 02–10161–BC.**

United States District Court, E.D. Michigan, Northern Division.

March 16, 2005.

Evan A. Zagoria, Provizer & Phillps, Bloomfield Hills, MI, for Plaintiff.

Robert W. Haviland, Eastern District of Michigan U.S. Attorney's Office, Flint, MI, Sheila H. Gaskell, United States Attorney's Office, Detroit, MI, for Defendant.

***OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING MATTER TO THE COMMISSION FOR FURTHER PROCEEDINGS***

LAWSON, District Judge.

This case is before the Court for the second time. In a prior action, the plaintiff challenged the Commissioner's determination that he was not disabled because

he did not have a "severe" impairment. The Court remanded the case to the Social Security Commission for further proceedings pursuant to the parties' stipulation.

The plaintiff filed the present action on May 23, 2002 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits under Titles II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award him benefits or in the alternative remand for further proceedings. The defendant filed a motion for summary judgment requesting affirmance of the Commissioner's decision. Magistrate Judge Binder filed a report and recommendation on March 26, 2003 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The Court extended the time for the plaintiff to file objections to the report and recommendation, the plaintiff filed timely objections to which the defendant responded, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and the Commissioner's response, and has made a *de novo* review of the administrative record in light of the parties' submissions. The plaintiff's objections generally challenge the magistrate judge's conclusion that substantial evidence supports the decision of the Administrative Law Judge (ALJ) that there are jobs in the national and regional economy that the plaintiff is capable of performing. The plaintiff presented four arguments in his motion for summary judgment, which he summarized in his objections. The Commissioner's response duplicates the language set forth in his motion brief.

This case involves a claim of disability based exclusively on a mental impairment; there is no claim of an exertional disability. It is uncontested that the plaintiff suffers from depression. The dispute centers on the functional limitations caused by this impairment and the determination made by the ALJ of the plaintiff's residual functional capacity. In his motion for summary judgment, the plaintiff argues first that the ALJ failed to give controlling weight to the opinion of Dr. McDonald, the plaintiff's treating psychologist. Second, he says that the ALJ failed to offer any rationale for resolving the conflicting medical evidence in the record. Third, the plaintiff contends that the ALJ improperly made his own medical determination that gave no weight to medical opinions in evidence favorable to the plaintiff. Fourth, the plaintiff insists that the ALJ improperly limited the plaintiff's cross-examination of the vocational expert. In his objections, the plaintiff also argues that the magistrate judge's comparison of the plaintiff to the description of plaintiffs in other cases involving claims of depression constituted an improper form of analysis.

The plaintiff, David H. McLean, Jr., presently fifty years old, applied for a period of disability and disability insurance benefits on September 9, 1997 when he was forty-two years old. He had worked as a senior automotive products designer for thirteen years and worked in the area of computer design for over twenty years. He completed a high school education. The plaintiff last worked on April 2, 1995, which is the date he alleges his disability began due to depression. He has received treatment for the psychological disorder since June 1995.

The plaintiff's application for disability insurance benefits, in which he alleged that he was unable to work due to depression, was denied initially and on reconsideration. On March 22, 1999, the plaintiff, then forty-four years old, appeared before ALJ Dennis L. Runyon, who filed a decision on April 14, 1999 in which he found that the plaintiff was not disabled. That decision ultimately was vacated by this Court, as noted above, and the matter was remanded for further proceedings on January 10, 2001. ALJ William J. Musseman held a supplemental hearing on the matter in September 2001 and issued a decision on October 31, 2001 again finding the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since April 2, 1995 (step one); the plaintiff suffered from the substantial impairment of major depression, which was "severe" within the meaning of the Social Security Act (step two); the plaintiff's impairment did not meet or equal a listing in the regulations (step three); and the plaintiff could not perform his previous work as a computer designer, which was skilled and required light exertion, because he could not perform complex tasks (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform work that does not require complex tasks, hourly quotas, or frequent contact with other people, and required only rarely dealing with co-workers and minimal supervision. The ALJ concluded that the plaintiff had no exertional limitations. Relying on the testimony of a vocational expert, the ALJ also found that the jobs of groundskeeper, farm laborer, and cleaner fit those limitations and that they exist in significant numbers in the national economy. He concluded, therefore, that the plaintiff was not disabled within the meaning of the Social Security Act. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied review on March 26, 2002.

The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). *See also Lashley v. Sec'y of Health & Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). The reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence in the record exists. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Thus, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Services*, 893 F.2d 106, 108 (6th Cir.1989). As the magistrate judge observed, the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (internal quotes and citations omitted). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

■ However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 388 (internal quotes and citations omitted); *see also Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000). Although the ALJ is not required to specifically discuss each piece of evidence in his decision, his reasoning must be articulated sufficiently to allow a reviewing court to perform its task in light of the applicable review standard. *See Cherukuri v. Shalala,* 175 F.3d 446, 455–56 (6th Cir.1999).

The plaintiff in this case testified at the administrative hearing that he functioned normally until 1995, when his wife suddenly left him and took their only daughter. The ensuing divorce and custody dispute triggered an onset of depression from which the plaintiff has not recovered.

The plaintiff obtained treatment from four mental health professionals, and he was evaluated by yet another. Dr. Sayed Ahmad saw the plaintiff for a psychiatric evaluation in June 1995, diagnosed major depression, and assessed the plaintiff as moderately impaired. Dr. Patricia Wolff treated the plaintiff for depression and anxiety from June 1995 to October 1997. She stated that the plaintiff exhibited a depressed mood, sleeplessness, feelings of hopelessness and grief, loss of life's pleasures, difficulty concentrating, and suicidal ideation. She determined that he was moderately impaired and could perform no aspect of his job. After that, Dr. Rebekah Bond saw the plaintiff nine times between January and September 1998. She also diagnosed major depression; found that the plaintiff suffered from depressed mood, tearfulness, diminished interest in activities, psychomotor retardation, loss of energy, feelings of inappropriate guilt, diminished ability to concentrate, indecisiveness, and suicidal ideation; and opined that he was unable to perform his job functions. In October 1999, the plaintiff began treating with Dr. Ruth McDonald, who saw him through June 2000. Dr. McDonald explained in a sworn statement that the plaintiff's depression began when the pressures of work combined with the stress of his divorce and loss of regular contact with his daughter, and "[t]he unfortunate part with this man is he is not able to pull himself out of it." Tr. at 338. She explained in some detail that the plaintiff would not be able to perform simple, routine tasks on a sustained basis forty hours per week. Tr. at 352.

The agency psychologist, Dr. George Pestrue, also diagnosed depression and found that the plaintiff was moderately depressed and only moderately impaired. He found that the plaintiff did not appear anxious, angry, suspicious or fearful, and he was fully oriented.

The ALJ observed in his decision that the opinions of the agency physician and the treating psychologists "conflict with regards to specific limitations," and stated that "[a]lthough the undersigned gives them both weight ... they are not given controlling weight." Tr. at 267. There is no other explanation in the decision why the treaters' opinions were not accepted. The plaintiff contends the failure to give reasons, and ultimately the failure to give controlling weight to the findings that the plaintiff suffered limitations that would prevent him from performing even simple tasks in a competitive setting, is error requiring reversal.

The Commissioner argues that the accommodations provided by the ALJ in his determination of residual functional ca-

pacity actually tracked Dr. McDonald's findings. After reviewing Dr. McDonald's entire statement, however, the Court concludes that the Commissioner's position is untenable. The pertinent portion of the colloquy between plaintiff's attorney and Dr. McDonald is set forth here:

Q Doctor, I am now going to have you evaluate Mr. McLean, in terms of his ability to function in a work setting, regarding various vocational factors. In terms of rating the degree of deficit, I am going to explain the terms to you. Moderate would be defined as an impairment of slight importance, which affects, but does not preclude ability to function. Moderately severe would be an impairment which seriously and significantly interferes with the ability to perform basic work activities independently, appropriately, and effectively. And severe would be extreme impairment of ability to function.

A How many categories do we have?

Q Those would be the three main rating criteria. The first factor would be to understand, carry out, and remember simple instructions.

A I think that's moderate.

Q To perform simple tasks.

A Moderate.

Q To independently perform routine repetitive tasks.

A It's moderate.

Q To sustain concentration to task.

A. Moderately severe.

Q To sustain attention to task.

A Moderately severe.

Q To use judgment.

A I think that would be moderately impaired.

Q To achieve goals and respond to time limits.

A He's slightly impaired on that.

Q To perform work requiring regular contact with others.

A That's severely impaired.

Q To relate appropriately to supervisors and coworkers?

A I would have to put that between moderately severe and severe someplace.

Q To relate appropriately to the public.

A I think that's moderate, if it's just on a casual basis.

Q The ability to maintain socially appropriate behavior and adherence to basic standards of neatness and cleanliness.

A Socially appropriate behavior?

Q Socially appropriate behavior.

A He can do that.

Q So there is no significant problem there. To response [sic] appropriately to usual work situations.

A That would be moderately severe.

Q To respond appropriately to changes in a routine work situation.

A That would be moderately severe. He doesn't like changes.

Q To respond appropriately to the stresses of customary work pressures in a work environment.

A Severe.

Q To maintain production standards.

A I have never watched him work, but I imagine he would have some trouble with that one.

Q The ability to make work-related decisions.

A That would be moderately. Probably not real good.

Q The ability to perform activities within a schedule, to maintain at-

tendance and to be punctual within customary tolerances.

A He's slightly impaired in that, but not severely. He's slightly impaired.

Q The last factor would be the ability to respond appropriately to supervision.

A I would say there was some moderate impairment there.

Q With regard to these evaluations or ratings, would these factors relatively be the same from going back to October of '99 to continuing to the present time?

A Yes. It says that he is very slow to trust and to unfold his story takes a long time. For me to evaluate that, it has taken a long time just to get into him. He's very slow to trust.

Q The next question would be, in terms of predicting to a reasonable medical certainty, would these limitations be likely to continue for the reasonably foreseeable future?

A Yes.

. . . . .

Q Sometimes the insurance companies talk about a claimant's ability to perform what might be called simple routine, repetitive tasks in a non-stressful environment.

A Where would that be?

Q Such as the fact is there even such thing as no-stress environment?

A There is not. We have to have a certain amount of stress, even to sit up in our chairs, so that's ridiculous.

Q And sometimes I guess the other thing is, even if a job might be comparatively less stressful, depending on Mr. McLean's problems, as I understand it, he would likely make a low stress job a very stressful job anyway.

A Yes, he would.

Q Would he be able to do even those, again, that hypothetical simple routine, repetitive type task?

A Not really, no.

Q On a forty hour per week sustained basis.

A No, no. Not at this point, no.

Tr. at 347–52.

The Commissioner argues that the statements of disability of Dr. Bond and Dr. Wolff were made in reference to the specific requirements of the plaintiff's former job. That may be, however neither of these two psychologists provided evidence that the plaintiff *could* perform within the limits drawn by the ALJ. Dr. McDonald's opinion describing the plaintiff's limitations eclipse the accommodations formulated by the ALJ, and the Court concludes that he could not have made the determination of residual functional capacity without rejecting the conclusions of at least Dr. McDonald.

The ALJ may have concluded that the plaintiff's daily activities conflicted with the limitations stated by the treating psychologists. However, there is no clear articulation in the record that such a rationale was considered or adopted by the ALJ. Moreover, Dr. McDonald explained that the plaintiff may do pretty well by himself but he deteriorates when he must go in crowds or interact with others. The record contains evidence that could explain the plaintiff's daily activities in a manner consistent with an inability to engage in substantial gainful activity, but there is no discussion whether or why this evidence was rejected.

 A Rule promulgated by the Secretary states that: "more weight [will be given] to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit has consistently applied this rule. A treating physician's opinion should be given greater weight than those opinions of consultative physicians who are hired for the purpose of litigation and who examine the claimant only once. *See Jones v. Sec.'y of Health & Human Services,* 945 F.2d 1365, 1370 n. 7 (6th Cir. 1991); *Farris v. Sec'y of Health & Human Services,* 773 F.2d 85, 90 (6th Cir.1985). If a treating physician's opinion is not contradicted, complete deference must be given to it. *Walker v. Sec'y of Health & Human Servs.,* 980 F.2d 1066, 1070 (6th Cir.1992); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984). However, a treating physician's opinion may be rejected if there is good reason to do so. *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). The Sixth Circuit has held that treating physicians' opinions "are only given such deference when supported by objective clinical evidence." *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir.2003)). Where a treating physician renders an opinion using legal language as opposed to medical terminology, the Court likewise may reject it if it is not supported by clinical evidence in the record. *See Casey v. Sec'y of Health & Human Services,* 987 F.2d 1230, 1234–35 (6th Cir. 1993).

However, the Sixth Circuit recently has held that reversal is required in a Social Security disability benefits case where the ALJ rejects a treating physician's opinion as to the restrictions on a claimant's ability to work and fails to give good reasons for not giving weight to the opinion. *Wilson v. Comm'r of Social Sec.,* 378 F.3d 541, 544 (6th Cir.2004). There, the court stated that "pursuant to [20 C.F.R. § 404.1527(d)(2)], a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 544 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)). The error is not harmless when the reviewing court is hampered by the lack of explanation and the rejected evidence could very well establish disability, as here. *Id.* at 547–48. The lack of an appropriate explanation for rejecting the opinions of the plaintiff's treating psychologists requires reversal in this case.

The plaintiff also contends that he was denied due process when the ALJ would not let him question the vocational expert concerning the limitations stated by Dr. McDonald. The ALJ prohibited the question because he believed that the terminology used by Dr. McDonald was vague and imprecise. The magistrate judge observed that the ALJ had asked a similar question to the vocational expert moments earlier, and the record therefore contained information that should have met the plaintiff's concern. The question asked by the plaintiff, however, was slightly different than the inquiry made by the ALJ. Although the Court doubts that the curtailment of questioning rises to the level of a due process violation, the Court sees no reason why the vocational expert should not attempt to respond to the inquiry. The terminology was defined in the sworn statement, which the vocational expert presumably read in its entirety, and if confusion remained the witness could have asked for clarification.

Because there is insufficient information in the record to justify the ALJ's rejection of the treating psychologists' opinions, substantial evidence does not support the decision of the Commissioner. Once the determination has been made that the Commissioner's decision is not supported by substantial evidence, the Court must decide whether further fact-finding is required. "[I]f all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits," this Court may remand for an award of benefits. *Faucher v. Sec'y of Health & Human Services,* 17 F.3d 171, 176 (6th Cir.1994). *See also Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985) ("In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.").

The Court may not determine the facts, but only may review the ALJ's determination based on the articulated reasons. There is a need in this case for an explanation for the rejection of the treating psychologists' opinions in light of the evidence on the whole record.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation is **REJECTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. # 13] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt. # 16] is **DENIED.**

It is further **ORDERED** that the findings of the Commissioner are **RE-** VERSED, and the case is **REMANDED** to the Commission for further proceedings.