RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0214P (6th Cir.)
File Name: 04a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GARY WARNER,
        *Plaintiff-Appellant,*

        *v.*                         No. 03-1641

COMMISSIONER OF SOCIAL
SECURITY,
        *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 01-40316—Paul V. Gadola, District Judge.

Submitted: June 8, 2004

Decided and Filed: July 8, 2004

Before: MARTIN and SUTTON, Circuit Judges; QUIST,
        District Judge.[*]

---

[*] The Honorable Gordon J. Quist, United States District Judge for the
Western District of Michigan, sitting by designation.

---

## COUNSEL

**ON BRIEF:** Kerry Spencer Johnson, WEISBERG &
WALKON, Southfield, Michigan, for Appellant. David
Skidmore, SOCIAL SECURITY ADMINISTRATION,
Chicago, Illinois, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Gary Warner
appeals the district court's judgment affirming the
Commissioner of Social Security's denial of social security
benefits. For the reasons that follow, we AFFIRM the
judgment of the district court.

I.

Warner, who has a twelfth-grade education and has earned
a high school equivalency diploma, worked as a production
worker for Robinson Industries. In that capacity, Warner
carved plastic parts and was required regularly to lift between
five and seventy-five pounds. On April 30, 1999, Warner
applied for disability insurance benefits under Title II and
XVI of the Social Security Act, claiming that he became
disabled as of February 12, 1998, as a result of carpal tunnel
syndrome.

Applying the sequential review process, the administrative
law judge found that although Warner had a severe
impairment, he was not disabled because he retained the
ability to perform past relevant work as a retail sales clerk.
Notably, the administrative law judge significantly discounted
the medical opinion of Warner's treating physician, Dr. Craig
R. Sonke, who had diagnosed Warner with bilateral carpal
tunnel syndrome in 1995. Dr. Sonke noted that Warner could

lift up to five pounds regularly, could sit up to four hours at a time, could stand or walk up to two hours per day in an eight-hour day and that Warner's overall endurance was affected by his chronic pain such that he would need two hours rest per eight-hour work day. Dr. Sonke concluded that Warner "is not capable of working an 8 hour day, 5 days a week for any type of job secondary to his chronic pain." The administrative law judge found, however, that the other medical evidence and Warner's own testimony did not support Dr. Sonke's determination that Warner's carpal tunnel syndrome affected his walking and standing ability. The administrative law judge also rejected Dr. Sonke's finding that Warner could lift only up to five pounds on a regular basis.

Moreover, the administrative law judge found Warner's testimony regarding his alleged chronic pain only partially credible. The administrative law judge then posed a hypothetical situation to the vocational expert to determine whether Warner retained the residual functional capacity to perform his past relevant work or other work existing in significant numbers in the economy. The administrative law judge listed the following constraints in the first hypothetical: inability to repeatedly grip or grasp with hands; ability to lift up to twenty pounds occasionally and up to ten pounds frequently; ability to stand, walk, or sit up to six hours in an eight-hour workday. These constraints were consistent with the conclusions of the state disability determination evaluator who completed Warner's residual functional capacity assessment, Dr. John R. Bartone. Considering these constraints, the vocational expert testified that Warner could perform his past relevant work in retail sales.

The administrative law judge then asked another hypothetical question reducing the amount of weight that Warner could lift or carry to ten pounds occasionally and five pounds frequently. The vocational expert testified that with those restrictions there existed thousands of jobs that Warner could perform. The vocational expert testified, however, that

if the agency fully credited Warner's assessment of his pain symptoms, then Warner would be unable to perform any of the thousands of jobs mentioned. Based on the credibility determinations and this testimony, the administrative law judge concluded that Warner was not disabled because he retained the residual functional capacity to perform past relevant work in retail sales. Warner appealed to the Appeals Council, which denied review, making the administrative law judge's denial of disability insurance benefits the final decision of the Social Security Administration.

Thereafter, Warner sought review of the Administration's decision in the United States District Court for the Eastern District of Michigan. The magistrate issued a report recommending the reversal of the denial of disability insurance benefits. The magistrate found that the Administration erred in finding Warner only partially credible because there was evidence in the record indicating that Warner took medication prescribed to alleviate pain symptoms. Crediting the objections of the Administration, the district court concluded otherwise and held that substantial evidence supported the Administration's denial of disability benefits. This timely appeal followed.

II.

"This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence exists when a "reasonable mind might accept" the relevant evidence "as adequate to support a conclusion." *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (internal quotation marks omitted). As long as substantial evidence supports the Commissioner's decision, we must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" *Wright v.*

*Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of proof through the first four steps of the inquiry, at which point the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." *Id.* In this case, the administrative law judge determined at step four of the inquiry that Warner was not disabled within the meaning of the act because he could perform his past relevant work in retail sales despite his impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iv) (describing step four of the sequential review process). Thus, our review is limited to determining whether substantial evidence supports the Commissioner's decision that Warner could perform his past relevant work as a retail sales clerk. *See Walters*, 127 F.3d at 529.

### A.

Warner argues that the administrative law judge erred in failing to defer wholly to the opinions of his treating physician, Dr. Sonke. Generally, the opinions of treating physicians are given substantial, if not controlling, deference. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2). Treating physicians' opinions are only given such deference when supported by objective medical evidence. *Jones*, 336 F.3d at 477. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

In this case, the administrative law judge essentially disregarded two conclusions of Dr. Sonke–his conclusion regarding the amount of weight that Warner could lift

regularly and his conclusion regarding Warner's walking and standing limitations. We conclude that it was proper for the administrative law judge to disregard these conclusions.

First, we conclude that substantial evidence supports the Commissioner's decision to disregard the conclusion of Dr. Sonke regarding the limits on the amount of weight that Warner could lift regularly. As the magistrate noted, Dr. Sonke's conclusion regarding the amount of weight that Warner could lift regularly appears to be based not upon his own medical conclusion, but upon the conclusion of a different doctor, as well as Warner's own assessment of his weight-lifting limitations. Moreover, that Warner could lift regularly up to ten pounds is consistent with Warner's own testimony regarding his ability to perform household activities.

Second, the Commissioner properly rejected Dr. Sonke's conclusion that Warner could stand or walk for no more than two hours in an eight-hour workday as it was inconsistent with the substantial evidence in the record indicating otherwise. *See* 20 C.F.R. § 404.1527(d)(2) (noting that treating physicians' opinions are given controlling weight when they are "not inconsistent with the other substantial evidence"). Dr. Sonke's conclusion regarding Warner's walking and standing abilities was not based upon objective medical evidence, as the record contains no such evidence indicating that Walker has an impairment to his lower extremities or that his carpal tunnel syndrome affected his walking and standing abilities. Moreover, it is contrary to the testimony of Warner himself, indicating that his carpal tunnel syndrome did not typically affect his ability to stand and walk and that the reason that he filed for disability benefits was the chronic pain in his hands. Furthermore, the record contains the notations of several examining physicians indicating that Warner's carpal tunnel syndrome did not affect his standing and walking abilities. Specifically, Dr. Ralph Scott Lazzara concluded from his physical examination of Warner that "[w]alking is unimpaired"; Dr. Blake A. Bergeon noted that

Warner's "gait is normal and symmetric"; and Dr. Bartone concluded that Warner retained the residual functional capacity to walk or stand up to six hours in an eight hour workday.

Finally, we note that we are unpersuaded by Warner's argument that the administrative law judge's partial rejection of Dr. Sonke's opinion was based upon a "gross mischaracterization of the record." Warner argues that the administrative law judge grossly misrepresented the evidence in concluding that Warner did not take prescribed pain medication because he takes Neurontin, a prescribed medication, for pain relief. Although it does appear that Warner took Neurontin as a pain reliever, the magistrate judge correctly noted that: "None of the medical records explicitly state that Dr. Sonke prescribed Neurontin for pain relief." Moreover, the administrative law judge's finding was consistent with the medical reference books indicating that Neurontin is an anti-convulsant, not a pain reliever. Furthermore, the administrative law judge did not completely overlook Warner's use of Neurontin, but noted that Warner took it "to help with the neuropathy." Additionally, the administrative law judge did not overlook the fact that Warner took other actions to relieve his pain symptoms, such as using a transcutaneous electrical nerve stimulation unit and taking over the counter medications for pain relief.

Under these circumstances, the administrative law judge properly rejected Dr. Sonke's conclusions regarding Warner's standing, walking and weight-lifting limitations. In reaching this conclusion, we find it significant that the administrative law judge did not reject wholesale the conclusions of Dr. Sonke and indeed incorporated Dr. Sonke's conclusions regarding Warner's limited ability to repetitively grip or grasp objects and Warner's overall endurance as affected by his impairment, in formulating hypothetical questions that he posed to the vocational expert.

B.

Second, Warner argues that the administrative law judge erred in finding that he could perform past relevant work because that finding was based upon an improper credibility assessment. The administrative law judge found Warner's testimony regarding his pain symptoms only partially credible, noting: "The claimant does not indicate he is taking pain pills that are prescribed but over the counter pain medications . . . . He indicates that he wears a TENS unit and it does help and he is able to take care of all of his personal needs and even do some cooking on occasion." A subjective assessment of pain symptoms is relevant to determining whether a claimant suffers from a disability, but is not conclusive evidence establishing a disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("Subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'") (quoting 42 U.S.C. § 423(d)(5)(A)). In evaluating the claimant's subjective complaints of pain an administrative law judge may properly consider the claimant's credibility, and we accord great deference to that credibility determination. *See id.*; *Walters*, 127 F.3d at 531 (stating that an administrative law judge's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an [administrative law judge] is charged with the duty of observing a witness's demeanor and credibility.").

The claimant's credibility may be properly discounted "to a certain degree . . . where an [administrative law judge] finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In this case, the administrative law judge found Warner's subjective assessment of pain only partially credible because the record indicated that he was not taking prescribed pain medication and because his own assessment of his daily activities indicated that his pain was not disabling. Warner argues that these findings were erroneous. We disagree.

As discussed, the administrative law judge was technically correct in observing that Warner did not take prescribed pain medication. Rather, Warner took Neurontin–a medication that the medical reference books describe as an anti-convulsant, but was in this case apparently taken as a pain reliever. Regardless of this clarification, however, we hold that the administrative law judge's credibility determination was supported by substantial evidence. The record reflects that although Warner alleged disabling pain, he also testified, consistent with the objective medical evidence, that he could manage his personal hygiene, pick a coin off a table, vacuum, drive short distances, and wash spoons and forks. The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain. *Id.* at 532 ("An [administrative law judge] may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

In sum, although the evidence could support the opposite result, we hold that substantial evidence in the record supports the Commissioner's conclusion that Warner was not disabled because he retained the residual functional capacity to perform his past relevant work.[1] *See Buxton*, 246 F.3d at 772-73 (noting that an administrative law judge's decision must be affirmed if there is substantial evidence in the record to support it regardless of whether substantial evidence could support the opposite conclusion). Thus, for the foregoing reasons, we AFFIRM the Commissioner's decision denying disability benefits.

---

[1] Because we hold that the Commissioner's conclusion that Warner retained the residual functional capacity to perform his past relevant work was supported by substantial evidence, we need not address Warner's argument that the Commissioner did not meet its burden of establishing –at step five of the sequential review process–that Warner could perform a signficant number of jobs in the economy despite his impairment.