**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0268n.06

Case No. 15-2341

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 16, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BONNIE J. MEUZELAAR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, ROGERS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Bonnie Meuzelaar sought Social Security Disability Insurance benefits and Supplemental Security Income due to fibromyalgia and recurring knee, back, and neck pain. Finding that Meuzelaar was not disabled, an administrative law judge declined her request. The district court denied relief and so do we, because substantial evidence supports the ALJ's decision.

In May 2009, Meuzelaar, then forty-seven, went to a clinic. A nurse found that Meuzelaar had symptoms of hypertension, fibromyalgia, and arthritis, wrote Meuzelaar multiple prescriptions, and discussed dietary changes and pain-management strategies with her. Over the next few years, Meuzelaar returned to the same nurse dozens of times, complaining of fibromyalgia-related symptoms, chronic back pain, leg pain, and, at times, difficulty sleeping.

The nurse continued to monitor Meuzelaar's health and suggest treatment options, writing a report after each visit.

In 2011, Meuzelaar applied for Social Security Disability Insurance benefits and Supplemental Security Income. The disability examiner denied Meuzelaar's requests, and an ALJ followed suit after a hearing. Because the appeals council denied review, the ALJ's decision is the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 & n.2 (2000). Meuzelaar challenged that decision before a district court, but it upheld the denial of benefits.

We review the Commissioner's factual findings for substantial evidence, asking whether "a reasonable mind might accept" the relevant evidence "as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted); *see* 42 U.S.C. § 405(g).

To receive disability benefits, Meuzelaar must show that she could not "engage in any substantial gainful activity" because of a long-lasting "medically determinable . . . impairment." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Five questions guide the Commissioner's (and ALJ's) assessment of a disability-benefits application: (1) Has the claimant shown that she is not engaged in "substantial gainful activity"? (2) Does she have a "severe impairment"? (3) Is the impairment on the "list of impairments presumed severe enough to render one disabled"? (4) Can the claimant perform her past jobs? And (5) can she perform other jobs "existing in significant numbers in the national economy"? *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *see* 20 C.F.R. §§ 404.1520, 416.920.

The ALJ adhered to this procedure. After moving through the first step, the ALJ found at steps two and three that Meuzelaar was hampered by several severe impediments (although none of them automatically made her disabled): obesity, fibromyalgia, degenerative joint disease,

degenerative disc disease, arthritis, and varicose veins. But the fourth step defeated Meuzelaar's application because, as the ALJ found, Meuzelaar was capable of performing her past work as a cashier. That meant the ALJ did not need to reach step five, and that meant Meuzelaar was not disabled for purposes of Social Security benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Substantial evidence supports the ALJ's decision. In determining Meuzelaar's limitations, the ALJ mainly relied on the testimony of the physician and psychologist who examined her, the only "acceptable medical sources" in the record. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). The physician found that Meuzelaar's health issues resulted in "some limitations" on the work she could perform, but noted that she could stand for six hours a day, sit for another six hours a day, and perform occasional lightweight lifting. AR 62. The ALJ also relied on a nurse's assessment. Although such an opinion—be it the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an "acceptable medical source," *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1), the ALJ still appropriately discussed the nurse's reports. In addition, the ALJ considered Meuzelaar's testimony about her limitations and an MRI indicating that Meuzelaar had degenerative disc disease.

On the basis of this evidence, the ALJ found that Meuzelaar was "limited to the light exertional level" and that her pain required her to be able to sit and stand at will on the job— something that the vocational expert testified was a viable option in many cashier jobs. AR 72. That meant Meuzelaar was capable of performing some of her past work. Because "the ALJ asked the right questions and provided reasonable answers," *Taskila v. Comm'r of Soc. Sec.*, No. 15-2224, 2016 WL 1533996, at *2 (6th Cir. Apr. 15, 2016), substantial evidence supports the finding that Meuzelaar is not disabled.

Meuzelaar's counterarguments are not convincing.

*First*, Meuzelaar claims that the ALJ did not give enough weight to the nurse's reports. Meuzelaar starts in the right place, pointing out that even though the nurse is not an acceptable medical source, the ALJ still must consider her opinion and how much weight to give it. *See Cruse*, 502 F.3d at 541. Meuzelaar goes astray, however, in reading the record, which shows that the ALJ did just that. The ALJ discussed Meuzelaar's lengthy "medical record," captured almost exclusively in the nurse's post-visit reports. AR 72. The ALJ also noted that the nurse thought Meuzelaar "would have difficulty standing for extended periods due to pain and would be better off alternating positions," *id.*, and that she "ha[d] some difficulty rising from the sitting position," *id.* at 73.

But, Meuzelaar responds, that was not enough; the ALJ needed to account for two particular reports from the nurse: a June 2009 post-visit report instructing Meuzelaar to lift no more than ten pounds, and a February 2012 report discussing Meuzelaar's limitations. On the contrary, the ALJ did not have to address each one of the nurse's reports—which cover around one hundred pages of the record—in her opinion. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). The June 2009 report at any rate predated the alleged onset of disability by nearly two years, and limited Meuzelaar's lifting for a mere two weeks, so there was no need for the ALJ to address it. And by limiting Meuzelaar to an alternating sit-stand work option, the ALJ accounted for the February 2012 report, which discussed Meuzelaar's troubles bending, reaching, and climbing along with her "[e]xcessive fatigue." AR 318.

The ALJ, it is true, mistakenly called the nurse a "treating physician." *Id.* at 72–73. But that mistake, if anything, gave the reports *more* weight than they deserve.

4

*Second*, Meuzelaar argues that the ALJ gave too much weight to the physician's opinion and incorrectly found no discrepancies between that opinion and the nurse's reports. But we, too, see no discrepancies. Both the physician and the nurse indicated that Meuzelaar is restricted in some types of movement, allowing the ALJ to conclude that Meuzelaar's range of movement limited her to "occasional balancing, stooping, kneeling, crouching and crawling." *Id.* at 72. And the physician considered Meuzelaar's work limitations, something the nurse never did. The nurse instead explicitly declined "[t]o address the disability issue" because she could not perform the necessary evaluations. *Id.* at 277. The ALJ gave the physician's report the weight it deserves.

*Third*, Meuzelaar claims the ALJ erred in finding her testimony "concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely credible." *Id.* at 72. But substantial evidence supports this credibility finding. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009). The ALJ noted that Meuzelaar lives alone and generally is able to function on her own, taking care of her cooking, cleaning, and laundry, as well as helping others with household tasks. The ALJ pointed out that Meuzelaar's treatment plan indicates that she "can and should be moving" and that she goes shopping for more than an hour at a time. AR 73. Because much of Meuzelaar's "own testimony suggest[ed] . . . [she] is capable of far more than she asserted," *id.*, the parts of her testimony to the contrary undermined her credibility.

*Fourth*, Meuzelaar faults the ALJ for mentioning her conservative treatment plan (mainly taking medications and exercising) in the credibility finding. Meuzelaar claims that she should not be held responsible for her lack of health insurance, which purportedly forced her to choose this treatment plan over a more aggressive plan (such as physical therapy or consultation with a surgeon). Even assuming the ALJ should not have relied on Meuzelaar's treatment choice when

making the credibility determination, a point we need not decide, any error was harmless, because the other problems with Meuzelaar's testimony amply support the ALJ's credibility finding. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

For these reasons, we affirm.