NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0126n.06

Case No. 17-1982

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 12, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TRESA EVELYN AUSTIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____/ | ) | |

Before: MERRITT, SUTTON, Circuit Judges, and CLELAND, District Judge.[*]

**MERRITT, Circuit Judge.** In this social security disability case, plaintiff Tresa Austin appeals from a district court decision affirming the decision of the Commissioner. We agree with the administrative law judge that Austin is not entitled to benefits both because she can still perform her past relevant work as a cashier, and alternatively that she can perform other jobs in the national economy as explained by the vocational expert.

**I.**

Austin filed an application seeking Social Security disability benefits beginning on September 24, 2012. Austin, born in 1969, was 43 at the time of her application. Austin

---

[*]The Honorable Robert H. Cleland, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

completed her GED and has past employment as a cashier and manager of a gas station, a school bus driver, and a housekeeper in the decontamination area of a hospital. The claim was initially denied on July 26, 2013, and Austin requested a hearing, which was held before an administrative law judge on December 23, 2014. Austin appeared with counsel and testified at the hearing. The administrative law judge determined that further development of the record was necessary due to a lack of qualified opinion evidence, and recommended that Austin undergo a consultative examination to further develop opinion evidence. The consultative examination report by Dr. Tara Abel was received, and the administrative law judge then submitted interrogatories to a vocational expert. The expert answered the interrogatories and they, along with the consulting physician report, were admitted into the record. The administrative law judge rendered an opinion based on the record evidence without holding another hearing. ALJ Decision, dated July 31, 2015. Austin filed a request for review of the administrative law judge's decision, but the Appeals Council denied the request for review. The decision by the administrative law judge became the final decision for judicial review in federal court pursuant to 42 U.S.C. § 405(g). A federal magistrate judge denied Austin's action, which became the final appealable order from the district court. *Austin v. Comm'r of Soc. Sec.*, No. 1:16-cv-998, 2017 WL 2644099 (W.D. Mich. June 20, 2017). We take this appeal directly from the magistrate judge pursuant to 28 U.S.C. § 636(c)(3) and Federal Rule of Civil Procedure 73(c). Austin raises the same three issues in this appeal as she raised below. The magistrate judge issued a thorough and well-reasoned opinion, and we affirm the judgment of the district court on the same grounds.

**II.**

The Social Security Administration provides Supplemental Security Income to eligible individuals who are under a "disability." *See* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has a specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A). The regulations state that when a claimant's impairments meet the durational requirement and are listed in the Listing of Impairments, the Secretary "will find you [the claimant] disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d). Section 404.1511 states that one definition of a disabling impairment is "an impairment (or combination of impairments) which, of itself, is so severe that it meets or equals a set of criteria in the Listing of Impairments in Appendix 1 . . . ."

According to Austin, her impairments include fibromyalgia, ulcerative colitis, Crohn's disease, hemorrhoids, degenerative arthritis in the lower back and hips, bone spurs in both feet, cervical degenerative disc disease with radiculopathy, dyslipidemia, hypothyroidism, headaches, and environmental allergies. Austin also suffers from obesity, although she did not list obesity as an impairment in her application. Although mention of these ailments can be found in Austin's medical records, they do not all appear to be then-current diagnoses for which she was actively being treated at the time of the alleged disability onset in 2012, and the duration and severity of a number of them are not found in the record. Austin bears the burden of proving that the existence and severity of the limitations caused by her impairments prevent her from working. The administrative law judge found that Austin does not have an impairment or

combination of impairments so severe as to meet or equal the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she is not otherwise disabled.

The administrative law judge then followed the five-step sequential evaluation process described in 20 C.F.R. § 404.1520(a)(4). The judge first found that Austin had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the administrative law judge found Austin had severe impairments of bone spurs in both feet, cervical and lumbar degenerative disc disease, osteoarthritis, Crohn's disease and obesity, but that none of these conditions, either alone or in combination, met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Subpt. P, App. I. He then determined Austin's residual functional capacity and found that Austin had the residual functional capacity for light work, with the ability to stand, and/or walk up to eight hours in an eight-hour day, with limited exposure to noise—a moderate level equal to an office environment. ALJ Decision at 5. At step four, the administrative law judge found that Austin could perform her past relevant work as a cashier, which is unskilled light work consistent with Austin's residual functional capacity. *Id.* at 9. If it is determined that a claimant is or is not disabled at any point in the process, further review is not necessary, and the administrative law judge can stop at that point. But, instead, the judge went on to find, in the alternative, that based on testimony from a vocational expert there are other jobs that exist in significant numbers in the national economy that Austin could perform consistent with her age, education, work experience and residual functional capacity. *Id.* at 10.

### III.

Austin raises the same three issues in our court as she raised in the district court: (1) The administrative law judge failed to give controlling weight to Austin's treating physicians'

opinions; (2) the administrative law judge failed to properly analyze Austin's obesity; and (3) the administrative law judge erred in failing to incorporate Austin's limitations due to the combination of her impairments into his determination of her residual functional capacity.

Our review "is limited to determining whether [the Commissioner's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Review for substantial evidence is not driven by whether we agree or disagree with the findings and decision of the administrative law judge. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers*, 486 F.3d at 241. Instead, the administrative law judge's factual findings are upheld if the substantial-evidence standard is met—that is, if a "'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see also Gentry*, 741 F.3d at 722.

In determining whether substantial evidence exists, we examine the evidence in the record as a whole and "take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978). This means that if we find substantial evidence to support the Commissioner's decision, we must affirm and may not inquire whether the record could support a different decision. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

## A. <u>Weight of Treating Physicians' Opinions</u>

Austin asserts that the administrative law judge failed to give controlling weight to the opinions of her treating physicians in violation of the social security regulations. Austin first claims that the administrative law judge failed to give controlling weight to the general emergency-room discharge instructions that Austin received in 2011 after being treated by an emergency-room physician, Dr. Quiring, for sharp pain in her left arm, radiating from her neck and going down to her thumb. The general discharge sheet is a preprinted form stating that "sitting . . . is not a good position" for patients suffering from certain types of nerve pain. Austin contends that this general discharge instruction serves as Dr. Quiring's opinion that "sitting" was not a good position for her. The reason for Austin's upper extremity pain was not clear, but Dr. Quiring diagnosed cervical radiculopathy, commonly referred to as a "pinched nerve," and noted that Austin's complaints might stem from a muscle spasm or disc bulge. He prescribed Percocet for the pain and Valium to help with muscle spasms. Austin was not admitted to the hospital. A review of the discharge instructions indicates that the advice about not "sitting" seems to be directed at patients with sciatica pain in the leg and Austin complained of neck and shoulder pain radiating to her hand. The instructions were not specific to Austin and her complaint or diagnosis, but instead were "generic" instructions that do not constitute the opinion of Dr. Quiring in this case.

We also note that an emergency-room physician is not considered a "treating physician" for purposes of allocating weight to a physician opinion, and his opinion need not be given controlling weight. The treating-physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and her maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined

a claimant but once, or who has only seen the claimant's medical records. Dr. Quiring examined Austin on only one occasion, and the rationale of the treating-physician doctrine simply does not apply here. Even if we were to recognize the discharge instructions as Dr. Quiring's "opinion," the instructions were entitled to no special degree of deference. *See Barker*, 40 F.3d at 794.

Austin also complains that the administrative law judge failed to give sufficient weight to the opinion of her treating physician, podiatrist Dr. Fox, who opined that Austin "may" need a "sit-down" job. Austin implies that given Dr. Fox's notation about needing a "sit down job," her residual functional capacity should have been for sedentary work only or the administrative law judge should have limited the amount of walking and standing in Austin's residual functional capacity

An administrative law judge must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (deference to the medical opinion of a treating physician requires that it be "based on sufficient medical data"); *Cutlip*, 25 F.3d at 287 ("Such opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."). Conversely, a treating source's opinion may be given less weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. If an administrative law judge decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The record reflects that the administrative law judge explicitly gave "some weight" to Dr. Fox's opinion and that he considered it in determining Austin's residual functional capacity. ALJ Decision at 8. Dr. Fox rendered a one-line opinion expressing some generalized doubt regarding Austin's ability to stand or walk at a job. Assuming that Dr. Fox's equivocal, one-line statement can be considered an opinion that Austin cannot stand or walk while performing a job, the administrative law judge did not err in refusing to give it controlling weight without more detail by Dr. Fox. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ, however, is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

The administrative law judge also had good reason to discount Dr. Fox's opinion because it was not supported by objective medical evidence in the record. Dr. Fox began treating Austin in August 2014 for tendonitis, bone spurs in both feet and plantar fasciitis in her right foot. Dr. Fox noted in December 2014, near the time of Austin's disability hearing, that Austin's condition was "improving" after physical therapy and other treatment. The administrative law judge explained that he gave the opinion only "some weight" based on review of the extensive documentation in the record of the diagnosis, treatment and prognosis Austin underwent during the fall of 2014 under Dr. Fox's care. The administrative law judge noted that both Austin and Dr. Fox reported improvement in Austin's bone spurs after physical therapy, which was ongoing at the time of the hearing. Because the medical evidence as a whole did not support Dr. Fox's conclusory opinion, the administrative law judge did not err in failing to give it controlling weight.

**B.  Consideration of Austin's Obesity**

Austin contends that the administrative law judge improperly evaluated her obesity.  The social security administration deleted obesity from the Listing of Impairments and views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability.  Soc. Sec. Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002).  The ruling provides guidance for evaluating a claimant's obesity, but does not create a separate procedure requiring the Commissioner to consider obesity in every case.  *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006).   The administrative law judge adequately considered the effects of Austin's obesity, finding that she had a "severe impairment" of obesity:

> Also, the undersigned considered SSR 02-1p with regard to claimant's obesity. Although the claimant did not specifically allege obesity as an impairment, recent weight at the hearing results in a calculated Body mass Index (BMI) of 39.47 (Ex. 10F/12), which is considered "obese" according to the *Clinical Guidelines*. Nevertheless, when considered with the other listings, the undersigned finds the claimant has not met or equaled a listing.

ALJ Decision at 5.  The administrative law judge also specifically stated that he considered Austin's obesity in determining Austin's residual functional capacity.  *Id.* at 6.

**C.  Residual Functional Capacity**

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The administrative law judge found that Austin was capable of light work with the ability to stand, and/or walk up to eight hours in an eight-hour day, with limited exposure to noise—a moderate level equal to an office environment. ALJ Decision at 5.  The judge did not conclude that Austin's impairments caused no limitations in her abilities, but instead he limited her functional capacity to the extent supported by substantial evidence in the record, including the opinion of the consultative physician, Dr. Abel.

In determining Austin's residual functional capacity, the administrative law judge gave substantial weight to the opinions of the consultative examiner, Dr. Abel, which were based upon an in-person examination of Austin and supported by the medical evidence as a whole. ALJ Decision at 9. As noted by the administrative law judge during the hearing, the record at the time of the hearing lacked qualified opinion evidence concerning many of Austin's allegations of impairment. ALJ Decision at 1. Dr. Abel completed testing to determine Austin's residual functional capacity. She assessed Austin to have retained the capacity for a restricted range of light work, where she could lift and carry 20 pounds occasionally, and 10 pounds frequently. She could sit, stand, and/or walk up to eight hours at one time, and she could continuously reach overhead, reach in all other directions, and perform handling, fingering, feeling, and push/pulling. She could continuously use both feet for the operation of foot controls, she had no limitations in postural activities, and she had no environmental limitations. ALJ Decision at 7-8.

Austin contends that the administrative law judge erred by not including additional restrictions based on her impairments, individually and in combination. Austin contends that the residual functional capacity did not account for: sitting difficulties due to chronic back pain, decreased range of motion, degenerative disc disease, hemorrhoids, and obesity; standing difficulties due to the bone spurs in her feet, chronic back pain, and obesity; head movement limitations due to cervical spine problems; and nonexertional difficulties including absences due to Crohn's disease, hemorrhoids, headaches, need for frequent and sometimes unpredictable bathroom breaks, pulmonary irritants such as fumes, odors, and dust, and environmental allergies.

Austin's claims are without merit. The administrative law judge determined the record does not support Austin's argument for additional limitations in sitting, standing or walking, or

the need for limitations in her head movements, postural limitations, limitations to pulmonary irritants, or any reaching limitations. Austin's subjective complaints are not consistent with the objective medical evidence in the record, or her own description of her daily activities. Despite allegations that she has difficulty standing and walking, Austin reported that she was independent in her activities of daily living, which include driving, preparing meals, doing laundry, dish washing, vacuuming, dusting, and climbing stairs, all for limited periods of time. She also stated she can walk about one block. Upon physical examination, Dr. Abel reported that Austin had only mild difficulty heel and toe walking, squatting and arising, balancing, and performing the tandem walk, and she could kneel and crawl. Austin's allegations about the frequency and severity of her Crohn's disease are also not supported by the objective medical evidence. She has not had any surgical procedures for the condition, and was treating her symptoms with medication. As for her bone spurs, Austin was treated with physical therapy and medication, and reported improvement in her symptoms and pain. ALJ Decision at 8. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (an ALJ may discount a claimant's allegations when the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence").

The record also reflects that the administrative law judge carefully considered Austin's medically determinable severe and nonsevere impairments, as well as the combined effect of those impairments. We have previously held that an administrative law judge's analysis of a claimant's combined impairments is sufficient where the judge referred to a "combination of impairments" in deciding the claimant did not meet the listings and all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). Here, the administrative law judge referred to

his consideration of Austin's medically determinable impairments, her combination of impairments, and her nonsevere impairments in evaluating her disability claim. ALJ Decision at 2-3. The administrative law judge also stated that he made his determination "[a]fter careful consideration of the entire record." *Id*. at 3.

For the foregoing reasons, we find the decision of the administrative law judge is supported by substantial evidence and we affirm the judgment of the district court.