NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0252n.06

No. 19-1266

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 05, 2020
DEBORAH S. HUNT, Clerk

MORGAN STEWART,                                )
                                               )
        Plaintiff-Appellant,                   )
                                               )       ON APPEAL FROM THE UNITED
v.                                             )       STATES DISTRICT COURT FOR
                                               )       THE WESTERN DISTRICT OF
COMMISSIONER OF SOCIAL SECURITY,               )       MICHIGAN
                                               )
        Defendant-Appellee.                    )


BEFORE:  SUHRHEINRICH, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.  Morgan Stewart seeks disability benefits and supplemental security income from the Social Security Administration.  He asserts that he cannot work because he suffers from chronic back pain, morbid obesity, diabetes, and depression, among other ailments.  But the Commissioner of Social Security denied his request after finding that Stewart could perform light work.  Because substantial evidence supports that decision, we must affirm.

Stewart has not had significant employment since March 2014, when he was 45 years old.  He suffers from many physical and mental ailments.  He has diabetes.  He weighs about 376 pounds and so qualifies as morbidly obese.  He has long endured chronic back pain.  He has "neuropathy," which causes numbness in his extremities.  He has high blood pressure.  And these physical ailments have led to depression.

In May 2015, Stewart applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for supplemental security income under Title XVI of that Act, *id.* §§ 1381–1383f. For both requests, he bore the burden of proving a qualifying disability. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). A disability examiner found that Stewart failed to meet his burden and denied his application. After a hearing, an administrative law judge upheld the denial of benefits. The judge recognized that a series of five steps guides this disability-benefits determination. *Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 583–84 (6th Cir. 2016); *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). An administrative law judge must first ask: Is the claimant currently engaged in "substantial gainful activity"? *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (citation omitted). If not, the judge next asks if the claimant has a "severe impairment." *Id.* (citation omitted). If so, the judge turns to the third step, which considers whether the claimant's impairments fall "on the list of impairments presumed severe enough to render one disabled." *Id.* at 25. If so, the claimant is disabled. *Id.* If not, at step four the judge asks whether the claimant can still perform previously held jobs. *Id.* If so, the claimant is not disabled. *Id.* If not, step five lastly considers whether the claimant "is capable of performing other jobs existing in significant numbers in the national economy." *Id.*

How did these steps play out for Stewart? The administrative law judge first recognized that he had not engaged in "substantial gainful activity" since March 2014. The judge next found several severe impairments: "degenerative disc disease of the lumbar spine, diabetes mellitus, hypertensions, a history of hernia repair surgery, sleep apnea, obesity, and depression." At step three, however, the judge held that these impairments were not on the regulatory list of impairments and so were not presumed severe enough to render Stewart disabled. At step four, Stewart failed to prove that he could not perform his past work. The administrative law judge initially decided,

after accounting for Stewart's impairments, that his "residual functional capacity" allowed him to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). This "light work" designation meant that Stewart could perform jobs that require frequent "lifting or carrying of objects weighing up to 10 pounds" (with a 20-pound limit). *Id.* The judge also found that Stewart could sit for six hours (with occasional standing) and stand for six hours (with breaks every half hour). This residual functional capacity meant that Stewart could perform his prior jobs—"as a cashier, a deliverer, and a school bus monitor." Because he could perform his past jobs, he did not qualify for benefits.

Stewart appealed to the Appeals Council, but it declined review. The administrative law judge's decision thus became the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 107 (2000). Stewart challenged that decision in court. The district court upheld the denial of benefits. This appeal followed.

Like the district court, we review the factual findings made by the Commissioner (through the administrative law judge) for "substantial evidence." 42 U.S.C. § 405(g). We defer to the administrative law judge's opinion unless the judge "has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007) (citation omitted). Substantial evidence exists when "a 'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted).

Stewart argues that the administrative law judge committed the following four errors: (1) failing to give controlling weight to the opinion of his "treating-source" physician; (2) overlooking the aggravating role of his morbid obesity; (3) incorrectly calculating his residual functional capacity; and (4) ignoring the effect of his depression on his ability to work. We disagree.

1. *Treating-Source Physician.* Stewart first asserts that the administrative law judge violated the Commissioner's "treating-source" regulations by giving little weight to the medical opinion of his primary-care doctor, Dr. Thomas Neidlinger. Under those regulations, the phrase "treating source" means a claimant's "own acceptable medical source" who provides, or has provided, the claimant "medical treatment or evaluation" as part of a current or previously "ongoing treatment relationship." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Administrative law judges must give a treating source's medical opinion "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Otherwise, the judge should evaluate the treating source's opinion in accordance with a set of regulatory factors. Those factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. The judge "need not perform an exhaustive, step-by-step analysis of each factor." *Biesteck v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biesteck v. Berryhill*, 139 S. Ct. 1148 (2019). But the judge must "give good reasons in [the] notice of determination or decision for the weight" given to the treating source's opinion. *Blakley*, 581 F.3d at 406 (quoting 20 C.F.R. § 404.1527(c)(2)). While "the reasons for that weight 'must be sufficiently specific,'" an administrative law judge "may accomplish the goals of this [good-reason] requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (citation omitted).

Here, substantial evidence supported the administrative law judge's decision to discredit Dr. Neidlinger's opinion. The judge noted that, in a questionnaire about Stewart's residual functional capacity, Dr. Neidlinger had opined that Stewart could work "at a less than sedentary exertional level," which was a level lower than the light-work level that the judge chose. The judge then explained why he gave this opinion "little weight": It was "not consistent with the medical evidence of record, which shows only conservative treatment and the ability to ambulate without the use of any assistive device." The judge thus adequately explained his reasons for rejecting the opinion as a procedural matter. *See Blakley*, 581 F.3d at 406–07.

Substantial evidence also supports the judge's reasons as a substantive matter. *See Warner*, 375 F.3d at 390. "Many courts" have recognized that "administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings.'" *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (citation omitted). For the most part, Dr. Neidlinger gave his opinion in this way. The judge also correctly noted that Stewart had received only "conservative" medical treatment because his records did not include a history of invasive surgeries. Medical records also contradicted the limitations that Dr. Neidlinger listed. *See Warner*, 375 F.3d at 391. A few months before he gave this opinion, for example, Dr. Neidlinger had noted that Stewart had normal gait, coordination, and strength. His examination notes also suggested that Stewart was able to "walk it off" when he experienced pain from muscle spasms in his legs. Likewise, another doctor who examined Stewart for purposes of his disability-benefits application (Dr. Molly Rossknecht) suggested that he had only "moderate difficulty getting on and off the exam table, heel and toe walking and squatting." Dr. Rossknecht also noted that Stewart had "full grip strength and unimpaired dexterity in both hands" and "full motor strength in all four extremities."

The judge's interpretation of this objective medical evidence was reinforced by the medical opinion of Dr. Larry Jackson. Dr. Jackson reviewed Stewart's records at the time of the initial denial of benefits and found that he could perform light work.

Stewart's responses do not change things. He initially suggests that "[c]onservative treatment is the only appropriate treatment for an individual suffering *morbid* obesity." But Stewart cites nothing in the record to back up this argument. A medical argument without medical record support does not meet Stewart's demanding burden to overcome our substantial-evidence standard of review. *See Walters*, 127 F.3d at 528.

Stewart next argues that, despite the judge's conclusion that Stewart could walk without an "assistive device," Dr. Rossknecht's examination notes stated that "[t]he patient uses a cane for ambulation." Yet, as the administrative law judge found, Dr. Rossknecht's examination notes did "not reflect a prescription for the same." Even Dr. Neidlinger wrote that Stewart used a cane only "occasionally." Neither doctor described an assistive device as a necessity. So substantial evidence supports the administrative law judge's finding.

Stewart also cites a part of Dr. Jackson's opinion where he says that it "appears" Stewart may be "capable of sedentary work requiring alternative sit and stand option." Stewart argues that this statement suggests that Dr. Jackson opined that he could undertake only sedentary work, not light work. But we must read this statement in the context of Dr. Jackson's entire opinion. And he found that Stewart could perform light work, including frequently lifting ten pounds and sitting or standing (with breaks) for six hours in an eight-hour workday. The administrative law judge thus could reasonably conclude that Dr. Jackson's opinion supported his findings.

2. *Evaluation of Obesity*. Stewart next argues that the administrative law judge ignored the aggravating effects of his morbid obesity on his other impairments. A ruling from the Social

Security Administration (a ruling the agency calls "SSR 02-1p") instructs that the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p, *Title II and XVI: Evaluation of Obesity*, 2000 WL 628049, at *6 (Sept. 12, 2002). We have held that this ruling does not impose any type of "separate procedure" that an administrative law judge must follow. *Austin v. Comm'r of Soc. Sec.*, 714 F. App'x 569, 573–74 (6th Cir. 2018); *see Coldiron*, 391 F. App'x at 443. Instead, a judge should simply consider a claimant's obesity "in combination with other impairments" when proceeding through the normal five-step disability analysis. *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

Here, as in *Coldiron*, Stewart's "obesity constitutes an overarching factor in his disability claim." 391 F. App'x at 437. And the administrative law judge properly considered its aggravating effects at each step of the evaluation process. *Shilo*, 600 F. App'x at 959. At step two, the judge listed "obesity" as a severe impairment. At step three, the judge considered Stewart's obesity "in combination with" his other impairments to decide whether Stewart should be presumed disabled. At step four, the judge took Stewart's obesity into account when calculating his residual functional capacity. The judge recognized that Stewart had a high body mass index over 50, and cited his obesity to find that he would need "frequent position changes" and limited "postural activities" in any potential job. All told, the judge's consideration of Stewart's obesity sufficed under our caselaw. *Austin*, 714 F. App'x at 573–74.

Stewart responds that the administrative law judge did not mention that he was *morbidly* obese. True, the judge did not use the word "morbid." But the judge expressly recognized Stewart's high body mass index, which placed him in the level of extreme (a synonym for morbid) obesity under SSR 02-1p. *See* 2000 WL 628049, at *2. And the medical opinion on which the

7

judge relied (Dr. Jackson's) described Stewart's obesity as "morbid," but still chose the residual functional capacity that the judge adopted.

Stewart also argues that the judge overlooked how his morbid obesity worsens his high blood pressure and diabetes. He, for example, points out that his blood pressure was so high during Dr. Rossknecht's examination that she suggested he go to the emergency room if he started having chest pains. But the judge properly considered Stewart's high blood pressure and diabetes when deciding the severity of his impairments. The judge, for example, found that neither Stewart's diabetes nor his high blood pressure had "impacted his other body systems to the extent required under the listings" at step three to find him presumed disabled.

Stewart lastly argues that his obesity exacerbates the limits on his "range of motion" caused by his other ailments (such as his chronic back pain). As noted, however, the administrative law judge took his limited mobility into account by finding, for instance, that Stewart would require "frequent position changes" at a job.

3. *Residual Functional Capacity*. Stewart also argues that the administrative law judge mistakenly identified his residual functional capacity because the judge did not measure Stewart's abilities across a full work week. Another ruling from the Social Security Administration ("SSR 96-8p") explains that a claimant's "residual functional capacity" assesses "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *1 (July 2, 1996). And it defines "regular and continuing basis" to mean "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* We review an administrative law judge's finding that a claimant could "perform sustained work under SSR 96-8p" for substantial

evidence. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 853 (6th Cir. 2020); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007).

The administrative law judge satisfied this requirement here. The judge cited the relevant ruling and recognized that Stewart's residual functional capacity turns on the limitations imposed by all impairments. He then examined what Stewart could undertake on a "sustained basis." He concluded that Stewart could work for six-hour time periods with many breaks. Substantial evidence supports that level of activity, including Dr. Jackson's opinion. *See Emard*, 953 F.3d at 853.

Stewart responds merely by citing conflicting evidence. He argues that Dr. Rossknecht's examination notes suggested that he appeared winded after only an hour-long examination. But it is the administrative law judge's task to resolve this conflicting evidence. *See id.* at 849. Once we find the judge's decision supported by substantial evidence, any conflicts in the record are not enough to overturn it.

4. *Effect of Depression*. Stewart lastly argues that the administrative law judge ignored his depression. Not so. At step two, the judge found that Stewart's depression was a "severe impairment." At step four, the judge found that the mental-health evidence showed that Stewart had "no more than moderate difficulties in interacting with others and in maintaining concentration, persistence, and pace." Despite that finding, the judge still relied on Stewart's mental-health evidence to restrict his residual functional capacity to "simple, routine, repetitive tasks." Substantial evidence supports the judge's finding of only moderate mental-health difficulties. A licensed counselor who repeatedly saw Stewart, for example, found that his behavior and thought processes were "normal" or "unremarkable" over many sessions.

Stewart offers two rebuttals. Rebuttal One: He criticizes the administrative law judge for giving "little weight" to the "Global Assessment of Functioning" score that his treating psychiatrist

assigned him in October 2016. Mental-health professionals use these scores as subjective measures of a patient's functioning, and Stewart says that his low score of 50 indicated serious symptoms. *See Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 857 nn.8–9 (6th Cir. 2018). The Commissioner, however, has long taken the view that these scores have no "direct correlation to the severity requirements of the mental disorders listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (citation omitted); *see Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). So we "have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower." *DeBoard*, 211 F. App'x at 415 (citation omitted). And here, the administrative law judge gave valid grounds for giving the score little weight. Stewart's score was "merely a 'snapshot[] in time' and not indicative" of long-term limitations. *Cf. Marijanovic v. Comm'r of Soc. Sec.*, 2017 WL 8231367, at *1 (6th Cir. Oct. 30, 2017). The judge also reasonably found that the score conflicted with other evidence, such as the counselor's repeated findings of largely normal behavior. *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 374–75 (6th Cir. 2017).

Rebuttal Two: Stewart argues that some of his mental-health records in May or June 2016 noted that he had "suicidal thoughts." But the records added that Stewart admitted that he would not carry those thoughts out. And he had no such thoughts at most of his counseling sessions. Thus, a "reasonable mind" could agree with the administrative law judge that Stewart's depression limited his mental capacity to "simple, routine, repetitive tasks," but did not require further restrictions. *Warner*, 375 F.3d at 390.

* * *

This case is like many others under the deferential substantial-evidence standard. While the "evidence could support the opposite result," it supports the result that the administrative law judge reached. *Id.* at 392. We thus have no legal basis to overturn it.

We affirm.