NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0541n.06

No. 20-5332

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TIMOTHY ALAN FOX, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Sep 18, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) | |
| | ) | |

Before: SILER, SUTTON, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge.  Timothy Fox filed a claim for Title II Social Security Disability Insurance (SSDI) benefits.  The Commissioner of Social Security denied the claim, and the district court affirmed.  For the reasons stated below, we AFFIRM.

I.

A.

In November 2014, Fox worked as a stock clerk at a supermarket.  At the time, he had just turned 50, had a high school education, and had previously worked as a correctional officer at the Kentucky State Penitentiary.  He had also struggled with chronic back pain since 2011.  While reaching to put a box on a shelf, he suddenly felt a sharp pain in his back and down his right leg. He found the pain from this incident debilitating enough to stop working.

Nurse Kimberly Bradley examined Fox on December 11, 2014.  She found that Fox exhibited no edema or tenderness, normal range of motion, no pain, no muscle spasms, normal

strength, and normal coordination. At his follow-up appointment five days later, Bradley found that Fox exhibited decreased range of motion, tenderness, pain, muscle spasms, and an abnormal gait. She ordered an MRI and an X-ray.

Fox saw Dr. Brandon Strenge on January 13, 2015. Dr. Strenge examined Fox and noted:

> The patient is able to easily get from the seated to the standing position. He walks with a smooth gait with no signs [of] antalgia. He is able to forward flex and actually touch his toes, but it causes some pain posteriorly in the back, but not the leg. Returning upright is swift and nontender. . . . He is nontender over the SI joints. He is nontender over the sciatic notches. He has a negative straight leg raise. He has normal muscle strength in the hip flexors, quadriceps, hamstrings, gastrocsoleus complex, extensor hallucis longus, and anterior tibialis bilaterally. Sensation is intact in all nervous distributions on today's exam. He is able to do a toe raise bilaterally as well as walk on his heels.

Dr. Strenge diagnosed Fox with acute exacerbation of chronic back pain; new onset right buttock and posterior thigh radiculopathy; mild degenerative lumbar scoliosis; mild spondylolisthesis, L4-L5; degenerative disc disease L3 to S1, worse L3 to L5; facet arthropathy, L3-L5, severe L4-L5; and foraminal stenosis, right L3 to L5, worse L4-L5. Dr. Strenge then gave Fox a shot of Toradol, a Medrol Dosepak, and meloxicam for pain. He also prescribed physical therapy. Dr. Strenge gave Fox a note to stay off work for two weeks and said that hopefully he could return to work then without restrictions.

At his two-week follow-up appointment, Fox met with physician assistant Jerry Smith and noted that he had no new complaints but had only recently started physical therapy. Smith recommended that Fox remain off work for six weeks for his physical therapy trial.

At a follow-up appointment on March 12, 2015, Smith noted that Fox's condition had improved with physical therapy and that "it would be reasonable for him not to lift more than 25 pounds secondary to his discomfort. I also believe it would be reasonable not to participate with prolonged sitting or standing activities that may flare his back pain symptomatology." So Dr.

Strenge and Smith allowed Fox to return to work for eight-hour days but with no prolonged standing, no prolonged sitting, and a twenty-five-pound lifting restriction.

Fox did not return to Dr. Strenge's office again until June 7, 2016. He said that his back pain had gotten worse since his last visit. Smith suggested another MRI, given that Fox's last MRI was from 2014. He also said that given Fox's symptoms at the time, he did not think that Fox could return to the active workforce.

Fox tried injection therapy but said that it did not make much of a difference. He returned for a visit with Smith on April 11, 2017. Smith noted that Fox did not appear to be in any acute distress, but that it would be difficult to return to the workforce given his symptoms. While Fox said that he did not think his pain was severe enough to warrant surgery at the time, Smith thought Fox might be a candidate for surgery in the future.

Dr. Strenge filled out a Medical Source Statement for Fox on July 21, 2017. He noted that Fox could frequently lift up to ten pounds, occasionally lift or carry up to twenty pounds, and should never lift or carry more than twenty pounds. He could sit for one hour at a time, but only stand or walk for twenty to thirty minutes at a time. In an eight-hour day, Fox could sit for five to six hours, stand for one hour, and walk for one hour. Dr. Strenge wrote that Fox needed frequent rest, either sitting or lying down, and that the medical diagnoses supporting this assessment were degenerative disc disease, facet arthropathy, and spinal stenosis. Dr. Strenge said that Fox could occasionally climb stairs and ramps, balance, stoop, and kneel, but should never climb ladders or scaffolds, crouch, or crawl. Finally, Dr. Strenge said that the limitations he noted had been present "since at least November 2014 if not earlier."

B.

Fox filed a claim for SSDI benefits, alleging that he became disabled on November 25, 2014, due to back and neck problems, degenerative disc disease, spinal stenosis, spondylolisthesis, scoliosis, hearing problems, and sleep apnea. To qualify for benefits, Fox needed to establish that the onset of his disability occurred prior to December 31, 2014 (the "date last insured"). His claim was denied due to insufficient evidence following an initial review and again after reconsideration. He requested and received a hearing with an Administrative Law Judge (ALJ).

After hearing the testimony of Fox and a vocational expert, the ALJ evaluated Fox's claim according to the five-step process detailed in 20 C.F.R. § 404.1520. Among other things, the ALJ determined that Fox had a residual functional capacity to perform light work. She found that Fox could frequently lift or carry up to ten pounds at a time, but could not lift more than twenty pounds; he could do a good amount of walking or standing; he could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds; he could frequently stoop, kneel, crouch, or crawl; and he could have occasional exposure to extreme cold and heat, vibrations, and moving mechanical parts. In determining Fox's residual functional capacity, the ALJ gave the opinion of Dr. Strenge, Fox's treating physician, some weight. But she declined to give Dr. Strenge's 2017 assessment controlling weight because it was inconsistent with the medical evidence in the record, including Dr. Strenge's own statements from 2015 and the diagnoses of mostly mild-to-moderate back injuries.

The ALJ determined that Fox could not return to his past relevant work as a correctional officer. Finally, the ALJ determined that given his age of 50, high school education, past work experience, and capacity for light work, Fox could adjust to light unskilled jobs such as products

-4-

assembler and security guard, both of which are jobs available in the national economy. Thus, Fox was not disabled.

Fox appealed the ALJ's decision to the Appeals Council, which denied his request for review. Fox filed for review in federal district court.

A magistrate judge found that the ALJ rested her determination of Fox's residual functional capacity on non-medical factors, and thus her decision was not supported by substantial evidence. He also found that the record established Fox's entitlement to benefits based on the July 2017 Medical Source Statement of Dr. Strenge. The Commissioner of Social Security objected to the magistrate judge's report and recommendation. The district court judge rejected the magistrate judge's report and recommendation and sustained the Commissioner's objection, finding that the ALJ's decision was supported by substantial evidence. Fox appeals.

II.

A.

We review the district court's decision regarding social security benefits de novo. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Our review of the ALJ's decision "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see* 42 U.S.C. § 405(g). The substantial evidence standard, while requiring "more than a mere scintilla" of evidence, is not a high bar; substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, this court will defer to the ALJ's decision if there is substantial evidence to support it, "even if there is substantial evidence in the record that would have supported an opposite conclusion."

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

B.

For purposes of SSDI benefits, a disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Courts follow a five-step sequential evaluation process to determine whether one is disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). This court has described the process as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.
2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374–75 (6th Cir. 2013) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). A claimant bears the burden of proving that he meets the definition of disability until step five, when the burden shifts to the agency to prove the existence of available work in the national economy. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1512(a)(1).

C.

The ALJ's treatment of Dr. Strenge's July 2017 Medical Source Statement is at the core of this case. If Fox had a residual functional capacity of sedentary, in line with Dr. Strenge's recommendation that Fox sit for five to six hours per eight-hour workday, then under Rule 201.14 of the Social Security Administration's Medical-Vocational Guidelines, Fox would be disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. However, because the ALJ found he had a residual functional capacity of light work, Rule 202.14 dictates that he is not disabled. *See id.*

Fox challenges the ALJ's finding that he has a residual functional capacity for light work on two grounds. The first is that the ALJ violated the treating physician rule and good reasons requirement. The second is that the residual functional capacity finding is not supported by substantial evidence. We disagree.

1.

Fox argues that the ALJ violated the treating physician rule by not giving the opinions in Dr. Strenge's 2017 Medical Source Statement controlling weight. The ALJ did not dispute that Dr. Strenge's opinion was well supported but discounted his opinion because of its inconsistency with the other evidence.

In evaluating medical opinion evidence, an ALJ will give the medical opinion of a claimant's treating physician controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record (the "treating physician rule"). 20 C.F.R. § 404.1527(c)(2); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). While controlling weight may be given to medical opinion evidence such as "the nature and severity of an individual's impairment(s)," controlling weight may not be given to "administrative findings that are

dispositive of a case"—for example, what an individual's residual functional capacity is or whether an individual is disabled. Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. § 404.1527(d); *see also Warner*, 375 F.3d at 390 ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." (alterations adopted) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985))). Furthermore, controlling weight may not be given to an opinion "unless it also is 'not inconsistent' with the other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1 (July 2, 1996).

If the ALJ decides not to give the treating physician's medical opinion controlling weight, she must determine what weight to give it by looking at "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6). The ALJ is required to "always give good reasons in [the] notice of determination or decision for the weight" of the "treating source's medical opinion" (the "good reasons requirement"). 20 C.F.R. § 404.1527(c)(2); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). These reasons must be specific in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's decision to give Dr. Strenge's 2017 Medical Source Statement only some weight, instead of controlling weight, is supported by substantial evidence. First, Dr. Strenge's more restrictive opinion was documented in July 2017, over two and a half years following Fox's

date last insured. We have recognized that when a treating source provides a medical opinion after the date last insured, it may be considered less probative than evidence provided before the expiration of the claimant's insured status. *Emard*, 953 F.3d at 849–50. Second, the opinion provided little detail beyond checked boxes. Dr. Strenge noted Fox's diagnosis—"degenerative disc disease at multiple levels with facet arthropathy resulting in spinal stenosis"—and mentioned that the limitations have been present "since at least November 2014 if not earlier," but did not provide much detail beyond that. The Social Security Administration's regulations make clear that the more concrete evidence a physician provides, the more weight will be given that opinion. 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

In addition, the limitations Dr. Strenge recommended in 2017 were far more restrictive than those he gave in early 2015. For example, when he saw Fox on January 13, 2015, he noted that Fox would hopefully be able to return to work without any restrictions after two weeks. And on March 12, 2015, Dr. Strenge gave Fox a note allowing him to return to work for eight-hour days with only the limitations of no prolonged standing, no prolonged sitting, and no lifting more than twenty-five pounds. And even these limitations were inconsistent with physical exams performed by nurse Bradley on December 11, 2014 and Dr. Strenge himself on January 13, 2015. Both indicated normal movement, normal strength, and little pain. Based on the evidence in the record, the ALJ was justified in not giving Dr. Strenge's 2017 opinion controlling weight.

Contrary to Fox's assertion, the ALJ provided good reasons for giving Dr. Strenge's 2017 opinion only some weight. The ALJ's opinion makes clear that she considered the factors that are required in determining what weight to give medical opinion evidence; that is, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6). The ALJ explicitly discussed Dr. Strenge's specialization in orthopedic spine surgery and noted that his opinion was supported by the medical record. Furthermore, it can be inferred that she considered the length, nature, and extent of Dr. Strenge's treatment relationship with Fox as well as the frequency of examination. She noted that Dr. Strenge was Fox's "treating physician" and detailed Dr. Strenge's diagnoses, notes, and recommendations from Fox's various visits. The ALJ then thoroughly explained why she found Dr. Strenge's 2017 opinion to be inconsistent with other substantial evidence in the record. She contrasted Dr. Strenge's more severe recommendations from 2017 that Fox could only stand and walk for one hour each with his opinions from early 2015, including that Fox could hopefully return to work in two weeks with no restrictions, could manage his symptoms with physical therapy instead of other interventions, and could return to work as long as he avoided prolonged sitting and standing and did not lift more than twenty-five pounds. These explanations are sufficient to meet the good reasons requirement.

2.

Fox also argues that the ALJ's finding that he has a residual functional capacity for light work is not supported by substantial evidence. We disagree.

A person's residual functional capacity is the most he is able to do despite any physical, mental, or environmental limitations resulting from his impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing residual functional capacity and takes into account all of the relevant medical and other evidence in doing so. *Id.* §§ 404.1545(a), 404.1546(c). This includes statements about the claimant's abilities provided by medical sources, whether or not they are

based on formal medical examinations, and non-medical statements from the claimant or others, including those regarding daily activities. *Id.* § 404.1545(a)(3); Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

The question before the ALJ was whether Fox had established that he was entitled to disability benefits before December 31, 2014. Thus, the ALJ had to determine what Fox's residual functional capacity was at that time. The record shows that Dr. Strenge's diagnoses following Fox's December 2014 MRI were mostly mild or moderate. Nurse Bradley's physical exam of Fox on December 11, 2014 revealed no edema or tenderness, normal range of motion, no pain, no muscle spasms, normal strength, and normal coordination. Though he showed decreased range of motion, tenderness, pain, muscle spasms, and an abnormal gait in a follow-up a few days later, Dr. Strenge's physical exam in mid-January showed that Fox was easily able to stand; walked with a smooth gait; could lean forward, touch his toes, and return upright swiftly; and had normal muscle strength. Fox himself acknowledged that he could lift up to twenty-five pounds and opted for more conservative treatments because he did not think that his pain warranted more serious interventions, such as injection therapy or surgery. Finally, on March 12, 2015, Dr. Strenge and Smith cleared Fox to go back to work with limitations in line with light work—avoiding prolonged sitting or standing and not lifting more than twenty-five pounds. This evidence is sufficient to support the ALJ's finding that between November 25, 2014 and December 31, 2014, Fox had residual functional capacity for light work.

* * *

Because the Commissioner's denial of Fox's claim for SSDI benefits was supported by substantial evidence, we AFFIRM.